# Supreme Court of the Navajo Nation

---

**Jolene Nez, Plaintiff-Appellant,**

v.

**Peabody Western Coal Company, Inc, XYZ Corporations 1-10;**
**John and Jane Does 1-10, Defendants-Appellees.**
**Decided September 22, 1999**

---

## OPINION

Before YAZZIE, Chief Justice, SLOAN* and FERGUSON* Associate Justices
(*by special designation).

Daniel M. Rosenfelt, Esq., Albuquerque, New Mexico, for the Appellant; and C.
Benson Hufford, Esq., Flagstaff, Arizona, for the Appellees.

Opinion delivered by SLOAN, Associate Justice.

This is an appeal from the Kayenta District Court's dismissal of a personal
injury action. The district court held that to allow Plaintiff-Appellant, Jolene Nez
("Nez"), to pursue a personal injury complaint against her employer, Defendant-
Appellee, Peabody Western Coal Company ("Peabody"), after she had received
workers' compensation benefits under the Arizona Workers' Compensation
Program for the same injuries, would constitute unjust enrichment. We reverse
and remand for further proceedings consistent with this opinion.

## I

On June 12, 1995, Nez, a member of the Navajo Nation, was injured during
her employment at Peabody's Black Mesa Mine near Kayenta, Arizona within
the Navajo Nation. Nez suffered permanent facial disfigurement after chemical
solvents splattered on her face while she cleaned paint brushes for Peabody. Nez
filed a claim for benefits with the Arizona Industrial Commission
("Commission") under the Arizona Workers' Compensation Act ("Act"). On
April 5, 1996, the Commission awarded Nez benefits for medical costs and lost
wages, and $7,530.77 for permanent disfigurement of her face.

In the spring of 1996, Nez requested that her claim be reopened so she could
receive additional medical treatment for areas of pigmentation loss on her skin.
Her workers' compensation carrier authorized additional medical care and com-
pensation for time lost from her job. The new medical treatment was unsuccess-
ful. On March 13, 1997, the Commission closed Nez's case. The Commission

416

found no change had occurred in her skin condition since the formal award of April 5, 1996, and therefore her total award for the permanent disfigurement of her face remained at $7,530.77.

On April 19, 1997, Nez brought a personal injury claim against Peabody in the Kayenta District Court. She sought damages for emotional distress, pain and suffering, diminution of the quality of her life, permanent facial disfigurement and any other damages not covered by the Commission's award for her June 1995 injury. Peabody moved to dismiss Nez's action for lack of subject matter jurisdiction.

On July 25, 1997, the district court ruled that "this action is not barred for a lack of jurisdiction," but dismissed Nez's action finding that this "suit would cause unjust enrichment and violate the legitimate expectations of both the employer and the employee under the workers' compensation scheme which the plaintiff elected to use." *Nez v. Peabody Western Coal Co.*, Order to Dismiss at 3, No. KY-CV-040-97 (decided July 25, 1997). The district court explained its decision in terms of equity:

> While the state law of the election of the remedy is a statutory matter which does not bind this court, the same equitable principle applies as a matter of Navajo Nation law. Where an applicable statutory scheme under state law is a remedy available to a plaintiff, and that plaintiff selects the remedy, it would be inequitable to allow a separate personal injury action under Navajo Nation law.

*Id.*

Nez appealed, arguing that no Navajo legal principle of equity can deny her action for a personal injury after she previously received workers' compensation benefits. Peabody argues that the Navajo Nation must recognize the exclusive remedy provision of the Arizona Act, and that, even if the Navajo Nation is not required to recognize the Arizona exclusive remedy provision, Nez should be equitably estopped from bringing her personal injury action.

## II

Of the issues raised by the parties, we need only address two.

1. Whether the Arizona Industrial Commission's award of workers' compensation benefits pursuant to 40 U.S.C. § 290 precludes the Navajo Nation courts from assuming subject matter jurisdiction over a personal injury claim arising from the same injuries.

2. Whether the Kayenta District Court erred in dismissing the action on equity grounds.

We hold that Arizona's application of its workers' compensation laws does not preclude the Navajo Nation courts from assuming jurisdiction over Nez's personal injury claim. We further hold that the district court abused its discretion in dismissing Nez's action on equity grounds.

## III

In 1936, the United States Congress enacted 40 U.S.C. § 290. Section 290 was passed to "fill a conspicuous gap in the workmen's compensation field." *See, e.g., Swatzell v. Industrial Comm'n of the State of Arizona,* 277 P.2d 244, 248 (Ariz. 1954) (quoting S.R. No. 2294, 74th Congress, 2d Session.). Prior to the passage of Section 290, employees working on federal lands for private employers were not covered by any workers' compensation program. They were not covered by the United States Employees' Compensation Act, because it covered only those directly employed by the federal government. Nor were they covered by any state compensation program, since such acts only protected employees on state lands. *Id.*

Section 290 has been interpreted to allow states to extend their workers' compensation coverage to employees of private employers operating on Indian reservations, but not to employees of tribal governments or enterprises. *Tibbets v. Leech Lake Reservation Business Committee,* 397 N.W.2d 883 (Minn. 1986) (holding that § 290 does not allow state workers' compensation laws to apply against Indian tribes as employers); *Swatzell v. Industrial Commission,* 277 P.2d 24 (Ariz. 1984) (holding that § 290 does not allow state workers' compensation laws to apply to employees of the federal government working on Indian reservations); and *Begay v. Kerr-McGee Corp.,* 682 F.2d 1311 (9th Cir. 1982) (holding that § 290 allows state workers' compensation laws to apply to employees of private employers on Indian reservations). We thus acknowledge that 40 U.S.C. § 290 allows the Arizona Industrial Commission to award benefits to employees injured while working for private employers within the territory of the Navajo Nation.

## IV

The question before us, however, is not whether 40 U.S.C. § 290 extends state jurisdiction into tribal land, but whether it precludes the Navajo Nation courts from exercising jurisdiction over a personal injury claim which has already passed through a state's workers' compensation program. Allowing a state program to compensate victims of workplace injuries on the reservation is vastly different than divesting the Indian nation courts of jurisdiction over an entire area of the law. Indian nation courts are central to tribal sovereignty, and divestiture of tribal jurisdiction is not to be inferred lightly.

In determining the extent of Indian nation court jurisdiction, we assume that Indian tribes retain all those aspects of sovereignty which have not been withdrawn by federal statute or treaty or by virtue of their dependent status. *Iowa Mutual Ins. Co. v. La Plante,* 480 U.S. 9, 14 (1987). Thus, there is a presumption that the Navajo Nation courts retain civil jurisdiction over the activities of non-Indians on reservation lands. *Id.* To determine if § 290 "rebuts" the presumption

of Navajo Nation jurisdiction, we follow the test of jurisdiction adopted by the United States Supreme Court in *National Farmer's Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 855-56 (1985). *See Pela v. Peabody Coal Co.*, 6 Nav. R. 238, 239 (1990) ("We agree with the approach pronounced by the United States Supreme Court [in *National Farmer's Union*] to determine tribal court jurisdiction.") In *National Farmer's Union*, the United States Supreme Court noted, "[t]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which the sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statute, Executive Branch Policy as embodied in treaties and elsewhere, and administrative or judicial decisions." 471 U.S. at 855-56.

We first consider the text and purposes of 40 U.S.C. § 290. Generally a federal law should not be interpreted as divesting Indian nation courts of jurisdiction absent an express declaration of such an intention by Congress. *Littell v. Nakai*, 344 F.2d 486, 489 (9th Cir. 1965). We find the text of § 290 to be silent as to its intended effect on the jurisdiction of Indian nation courts. Nor does the express purpose of § 290 indicate a congressional desire to divest Indian nation courts of jurisdiction; as explained above, the purpose of § 290 was to ensure that workers who were previously "slipping-through-the-cracks" between state and federal workers' compensation systems received coverage. Extending the scope of state law does not necessitate a corresponding reduction in the jurisdiction of Indian nation courts. Finally, we find the date of passage of § 290 to be partially illustrative of Congress' intentions; Congress passed § 290 in 1936, over two decades prior to the establishment of the Navajo Nation Courts in 1959.[1] We find it obvious that Congress could not have intended to divest jurisdiction from a court system that did not yet exist.

We also find the states' treatment of the exclusivity remedy to be illustrative. A workers' compensation award in one state does not preclude a common-law action based on the same facts against the employer in a second state. This is true even if the first state claims that its workers' compensation statute is the exclusive remedy available. *See Carroll v. Lanza*, 349 U.S. 408 (1955) (holding that full faith and credit clause does not compel one state to enforce the exclusive remedy provision of another state's workers' compensation law). *See also Garcia v. American Airlines, Inc.*, 12 F.3d 308 (1st Cir. 1993) (holding that the forum state had jurisdiction over an employee's common law tort suit even after the employee had received benefits under another state's workers' compensation program). Generally, a state court will enforce another state's exclusive remedy provision, but it will do so for discretionary reasons of comity and not because it is required to do so. *Garcia*, 12 F.3d at 312.

We thus conclude that 40 U.S.C. § 290 does not divest the Navajo Nation courts of jurisdiction over personal injury claims brought on the basis of injuries for which the plaintiff has already recovered under a state workers' compensation statute.

---

1. Tom Tso, *The Process of Decision Making in Tribal Courts*, 31 Ariz. L. R. 225, 230 (1989).

## V

The fact that the Navajo Nation courts have jurisdiction does not necessarily indicate that that jurisdiction should be exercised. We must consider, as a matter of comity to Arizona, and as a matter of Navajo public policy and Navajo common law, whether the exercise of jurisdiction over personal injury claims based on injuries already heard by the Arizona Industrial Commission undermines the workers' compensation regime. We recognize that workers' compensation systems represent a trade-off on which all parties — both workers and employees — rely. Workers receive benefits without placing their own contributory fault at issue and employers are protected from protracted litigation and potentially devastating damage awards. We also recognize that economic development is important to the Navajo Nation, and that businesses seeking to operate in the Navajo Nation desire a legal environment that is predictable and fair.

We are thus faced with a delicate balancing test. On one hand, the Navajo Nation courts have jurisdiction over civil disputes on the Navajo Nation and a duty to ensure that parties injured on the Navajo Nation are treated justly and in accordance with Navajo custom and tradition. On the other hand, we recognize that Arizona has a legitimate interest in the integrity of its workers' compensation program, and that private employers have an interest in predictable procedures.

In recognition of this balance, we hold that, while Navajo Nation courts have jurisdiction over claims such as Nez's, such jurisdiction should be exercised with restraint. The Navajo Nation courts should not permit personal injury suits as a "supplement" to state workers' compensation awards unless it is clear that the compensation received under the workers' compensation regime is substantially different from what Navajo common law would consider adequate. We anticipate that the number of instances where a personal injury remedy will be necessary to supplement a state workers' compensation award will be rare; thus, the integrity of the Arizona workers' compensation regime will not be significantly undermined. Whether Nez's award under Arizona's program is substantially different from what would be adequate under Navajo common law is a matter of fact to be determined by the district court.

## VI

We further hold that before proceeding to the merits of Nez' s case, the district court should consider several factual "threshold" issues.

### A. Waiver

Under Navajo Nation law a party may waive its right to pursue a remedy in court. The district court must consider whether Nez acted in a manner that operated to waive her right to bring this personal injury action in the Navajo Nation courts.

Waiver under Navajo common law requires: (1) a distinct waiver of a right; (2) full knowledge of a right which is given up; (3) the fact the person giving the thing up knows his right; (4) a plain appearance that the person intends to give up the rights; and (5) a voluntary and intentional surrender of rights. *In re Estate of Tsosie*, 4 Nav. R. 198, 200 (W.R. Dist. Ct. 1983).

## B. Equitable Estoppel

The doctrine of equitable estoppel prevents a party from claiming a right against another person who in good faith has relied on the party's prior conduct and has changed his position for the worse. The doctrine of equitable estoppel is recognized by the Navajo Nation courts. *Tafoya v. Navajo Nation Bar Association*, 6 Nav. R. 141, 142-43 (1989); *In re Practice of Battles*, 3 Nav. R. 92, 98 (1982) (Neswood, J. concurring).

The district court must consider whether, as a factual matter, Peabody was disadvantaged by Nez's resort to the Arizona workers' compensation system and delay of two years before filing a personal injury action.

## C. Remedy under Navajo Common Law

If, after consideration of the threshold issues described above, the district court reaches the merits of Nez's claim, it must determine whether, as a factual matter, the remedy Nez received from the Arizona workers' compensation regime is substantially different than the remedy compelled by Navajo common law. Under Navajo common law, damages in personal injury actions are measured by *nalyeeh. See Benally v. Navajo Nation*, 5 Nav. R. 206 (1986). *Nalyeeh* has been interpreted to include a broad range of damages, including claims such as mental anguish and pain and suffering. However, *nalyeeh* is a flexible concept of distributive justice, and it is possible that Navajo common law prevents plaintiffs from seeking to recover twice for the same injury. How *nalyeeh* should apply in Nez's situation is a matter to be determined by the district court.

We thus reverse the district court and remand this case for disposition consistent with this opinion.