Sandor GARCIA, Plaintiff, Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant, Appellee.

No. 93–1534.

United States Court of Appeals,
First Circuit.

Heard Nov. 5, 1993.

Decided Dec. 29, 1993.

Juan Rafael Gonzalez–Munoz, Hato Rey, PR, for plaintiff, appellant.

Pedro A. Delgado Hernandez with whom Jorge L. Capo Matos, Hato Rey, PR, was on brief, for defendant, appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant Sandor Garcia seeks to litigate a tort claim against his employer pursuant to the Puerto Rico workers' compensation act even though he previously received substantial benefits based on the same injury under the Florida workers' compensation scheme. The district court granted summary judgment for the employer, American Airlines, ruling that the exclusive remedy provision

contained in the Florida statute protected the company from further liability. We affirm.

## I. *Background*

The relevant facts in this case are few and undisputed. Plaintiff Garcia, a flight attendant based in Puerto Rico, injured his back while working on a flight from San Juan to Newark, New Jersey, in early 1991. From 1979 through the time of the injury, American provided workers' compensation benefits to its employees through a policy in Florida, pursuant to the Florida Workmen's Compensation Act, Fla.Stat.Ann. §§ 440.01–440.60. Shortly after his accident, Garcia received a "Notice of Injury" form from the airline and filed it with the Florida Department of Labor. He ultimately received about $44,000 in medical and disability payments under American's Florida policy.

In January 1992, Garcia filed this damages action in Puerto Rico, alleging that American was subject to traditional tort liability because it had failed to fulfill its obligation to secure workers' compensation coverage for Garcia through the Puerto Rico State Insurance Fund. Under the Commonwealth's workers' compensation act, an employer who is required to participate, but does not, may be sued for damages by an injured employee. *See* P.R. Laws Ann. tit. 11, § 16.

In response, American raised two primary defenses. First, it argued that it was not obligated to provide workers' compensation coverage for Garcia in Puerto Rico because less than 50% of his worktime was spent there. The airline thus was free to insure its employees elsewhere and, because Garcia had received substantial benefits under the Florida statute—indeed, higher benefits than would have been available in Puerto Rico— American was immunized from further liability by that act's exclusive remedy provision.[1] Second, the airline argued that, to the extent statutory immunity was not dispositive, the matter raised an arbitrable minor dispute over which the court lacked subject matter

jurisdiction, pursuant to the federal Railway Labor Act, 45 U.S.C. §§ 151–188.

The district court dismissed the complaint on statutory immunity grounds, ruling that Puerto Rico would give effect to the exclusive remedy provision contained in the Florida workers' compensation act. The court summarized its conclusion as follows:

> The Court finds, therefore, that where an employee spends over fifty (50) percent of his work time outside of Puerto Rico, and is insured and compensated pursuant to the workers' accident compensation laws of a state which provides benefits superior to those granted in Puerto Rico, the Commonwealth of Puerto Rico would have no interest in barring the operation of the foreign statute's exclusive remedy provision.

The court did not rule on American's argument concerning the Railway Labor Act, 816 F.Supp. 72.[2]

On appeal, Garcia reiterates his contention that the Florida exclusive remedy provision may not be given effect to bar his claim for common law damages in Puerto Rico. Our review of the district court's grant of summary judgment is plenary. *See Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 24 (1st Cir.1993).

## II. *Discussion*

We begin with a few basic principles of workers' compensation law to help to put this case into context. First, it is well established that an injured worker may obtain successive awards in different states, with total recovery limited to the amount of the higher award. 4 A. Larson, *Workmen's Compensation Law* § 85.00, at 16–18 (1992); *see Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 286, 100 S.Ct. 2647, 2663, 65 L.Ed.2d 757 (1980) (plurality); *Industrial Comm'n of Wisconsin v. McCartin*, 330 U.S. 622, 626, 67 S.Ct. 886, 889, 91 L.Ed. 1140 (1947). Thus, Garcia's receipt of benefits from Florida does not automatically preclude an effort to obtain

---

**1.** The Florida workers' compensation act states that an employer's statutory liability for benefits shall be "exclusive and in place of all other liability of such employer...." Fla.Stat.Ann. § 440.11(1).

**2.** We also find it unnecessary to address this issue.

additional benefits through his tort action in Puerto Rico.

Virtually all workers' compensation statutes, however, contain an exclusive remedy provision, stating that an award. of statutory benefits forecloses any other type of compensation for the injury, including damages in tort. *Workmen's Compensation Law,* § 88.-10, at 16–171.[3] Employees trade their tort remedies "for a system of compensation without contest, thus sparing [them] the cost, delay and uncertainty of a claim in litigation." *Mullarkey v. Florida Feed Mills, Inc.,* 268 So.2d 363, 366 (Fla.1972). Conversely, workers' compensation statutes typically allow a damages remedy against employers who fail to assume the statutory compensation burdens. The theory behind these provisions is self-evident. An employer who avoids sharing in the burdens of the system is not entitled to enjoy its primary benefit, the immunity from non-statutory liability. Florida's and Puerto Rico's statutes each have both types of provisions.

This case involves a head-on collision between the employee's right to successive workers' compensation remedies and the immunity granted by individual jurisdictions to employers who participate in their own workers' compensation programs. Specifically, Garcia claims that he is entitled to bring a damages suit in Puerto Rico—where American was not insured—despite the statutory immunity conferred on the airline in Florida—where it was insured.

■ Garcia's argument rests on several related contentions: (1) that the Florida workers' compensation act is inapplicable to his injury because no Florida interests were implicated; (2) that American was obligated to insure him under the Commonwealth's compensation scheme because he is a Puerto Rico resident whose job is based there; (3) and, finally, that the inapplicability of the Florida statute renders its exclusive remedy limitation impotent, while the neglected obligation under Puerto Rico law empowers him to sue American for damages.

We believe that each of these premises is flawed. As a result, we conclude that the district court properly dismissed Garcia's tort action.

### A. Applicability of Florida law.

■ It is important to remember, as noted above, that more than one workers' compensation statute can apply to a single compensable injury, so long as each state has a "more-than-casual" interest in the case. 4 *Workmen's Compensation Law* § 86.00, at 16–48. Florida law may apply to Garcia's injury, therefore, even if another state—or the Commonwealth of Puerto Rico—has more substantial interests in his claim. "[T]he test is not whether [Florida]'s interest is greater than that of any other state, but only whether [Florida] has a valid interest." *Id.* § 86.34, at 16–60 (citing *Dissell v. Trans World Airlines,* 511 A.2d 441, 444–45 & n. 3 (Me.1986)).

Garcia claims that Florida law is wholly inapplicable to his injury, and that the exclusive remedy provision contained in the Florida workers' compensation statute therefore may not be invoked to bar his damages lawsuit in Puerto Rico. Florida law does not apply, he claims, because neither he, his job, nor his injury has a Florida connection. He emphasizes that he is a Puerto Rico resident based in Puerto Rico; that he entered into his employment relationship with the airline, a Delaware corporation, in Texas; and injured himself while traveling between San Juan and Newark, New Jersey.

In support of his argument, Garcia relies heavily on a Florida Supreme Court case, *Wainwright v. Wainwright,* 237 So.2d 154 (1970), in which a Georgia resident employed by a Georgia corporation sought benefits under the Florida workers' compensation statute for an injury suffered in Georgia. The court upheld the administrative denial of the

---

3. An exception to the rule allowing successive benefits awards may exist when an exclusive remedy provision, in addition to foreclosing other types of relief within the state, specifically bars remedies available in other jurisdictions. *See Workmen's Compensation Law* §§ 85.20–85.40;

*Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 286–90, 100 S.Ct. 2647, 2663–66, 65 L.Ed.2d 757 (1980) (plurality) (concurring opinion of White, J.). This exception is not relevant here.

claim and, in the course of its opinion, noted that the statute could not be applied, "to other states in which ... the State of Florida has no interest and to cases over which the State of Florida has no authority," *id.* at 156. Garcia maintains that the same factors upon which the Florida Supreme Court relied to reject the claim in *Wainwright* exist here: an extraterritorial injury to a non-resident employee working for an out-of-state employer.

Garcia's argument, and his reliance on *Wainwright*, are misplaced. Unlike in *Wainwright*, neither the employer's business nor the employee's work are located exclusively *outside* Florida. American Airlines operates in Florida, and Garcia worked on flights into and out of at least two Florida cities. *See* Sworn Statement of Jorge Olascoaga, Flight Service Supervisor, at 6. Although Garcia is correct that Florida's contacts with his injury are limited, this is at least in part because of the inherently mobile nature of both his job and American's business. The airline has 21,000 flight attendants spread across the country, and no single state has a substantial relationship with all of them.[4]

Moreover, even if these contacts were deemed insufficient to trigger the coverage provisions of the Florida act directly, Garcia nevertheless would be covered because of American's voluntary assumption of liability under the Florida system. The Florida statute permits an otherwise excluded employer to waive the exclusion and bring itself or a specific injury within the act's coverage by choosing to participate in the Florida work-

er's compensation scheme. *See* Fla.Stat.Ann. § 440.04(2).[5] *See Mandico v. Taos Construction*, 605 So.2d. 850, 852 (Fla.1992) (per curiam); *Blair v. Edward G. Gerrits, Inc.*, 193 So.2d 172, 174–75 (Fla.1966); *Rainwater v. Vikings Men's Hairstyling*, 382 So.2d 1313, 1314–15 (Fla.App.1980). For more than a decade before Garcia's accident, American voluntarily provided accident insurance for its employees in Florida, and, in this case, it specifically facilitated Garcia's application for benefits by providing him with the required form.

Even more to the point, we think it decidedly inequitable for Garcia to claim that Florida law is inapplicable now that he has received all the benefits that law provides. Workers' compensation systems are designed around a *quid pro quo:* employees secure "a practical and expeditious remedy for their industrial accidents," *Cardillo v. Liberty Mutual Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947), while employers secure "a limited and determinate liability," *id.* Unlike in *Wainwright*, where the employer and the Florida Industrial Claims Commission both denied the employee's claim for benefits, Garcia has received substantial compensation under the Florida scheme. Indeed, it is undisputed that the compensation he received exceeds the benefits to which he would have been entitled under Puerto Rico law. Garcia makes no offer to return the Florida benefits. Having acquiesced in the applicability of Florida law when it suited his interest, Garcia cannot fairly be allowed to disclaim its application now.[6]

---

4. Not all flight attendants based in Puerto Rico are residents of the Commonwealth. The Puerto Rico group includes residents of Florida and the United States Virgin Islands.

5. Section 440.04(2) provides:

When any policy or contract of insurance specifically secures the benefits of this chapter to any person not included in the definition of "employee" or whose services are not included in the definition of "employment" or who is otherwise excluded or exempted from the operation of this chapter, the acceptance of such policy or contract of insurance by the insured and the writing of same by the carrier shall constitute a waiver of such exclusion or exemption and an acceptance of the provisions of this chapter with respect to such person....

6. Garcia's uncontested receipt of benefits in Florida is perhaps the single most significant distinction from the *Wainwright* case inasmuch as it shows American's intent to waive any possible exclusion from coverage under the Florida act. In rejecting the request for benefits in *Wainwright*, the Judge of Industrial Claims made a specific finding that there was no waiver, and the state supreme court held that competent substantial evidence supported that ruling. 237 So.2d at 156–57.

Moreover, in light of Garcia's acceptance of undisputed benefits, we see no reason to dwell on the substantiality of Florida's relationship to the injury. Given the policy of successive awards, the only relevant concern is whether Florida's exercise of jurisdiction would compromise the law of another jurisdiction with more

Determining that Florida law may be applied does not lead inevitably, however, to the conclusion that the present action is barred by the exclusive remedy provision in Florida's compensation act. The Supreme Court repeatedly has rejected the notion that the Full Faith and Credit Clause of the Constitution requires a second jurisdiction to defer to limiting provisions contained in the workers' compensation legislation of the jurisdiction in which an injured worker first received benefits. 4 *Workmen's Compensation Law* § 88.12, at 16–183. *See Thomas,* 448 U.S. at 279–80, 284–86, 100 S.Ct. at 2659–60; *Carroll v. Lanza,* 349 U.S. 408, 413–14, 75 S.Ct. 804, 807–08, 99 L.Ed. 1183 (1955); *McCartin,* 330 U.S. at 628–30, 67 S.Ct. at 889–90. This means that Garcia not only is permitted to seek additional benefits, but also that Puerto Rico is free to disregard Florida's exclusive remedy provision.

When a worker's second claim is for common-law damages rather than additional benefits, however, most states, on grounds of comity and policy, will respect the other jurisdiction's exclusive remedy provision immunizing the employer from non-statutory liability. 4 *Workmen's Compensation Law,* §§ 88.00, 88.10, at 16–171–183 (citing cases); *see, e.g., Kelly v. Guyon Gen. Piping, Inc.,* 882 F.2d 108, 110 (4th Cir.1989); *Woodner v. Mathers,* 210 F.2d 868, 873–74 (D.C.Cir. 1954). The rationale underlying this uniform treatment is compelling. The central purpose of compensation acts is "to substitute a limited but certain remedy for the former remedy in tort—a compromise benefiting both employer and employee." 4 *Workmen's*

*Compensation Law,* at § 88.13, at 16–187 (citing *Wilson v. Faull,* 27 N.J. 105, 141 A.2d 768 (1958)). When an employee who has received benefits under such a compensation scheme later tries to get back into the common-law damage system, he is essentially undoing this fundamental *quid pro quo. See* Restatement (Second) of Conflict of Laws §§ 183, 184 (1971).[7] Courts that give effect to foreign exclusive remedy provisions therefore do so to effectuate broad compensation principles. *See Wilson,* 141 A.2d at 778; *Woodner,* 210 F.2d at 874.

Whether Puerto Rico would follow this course in the present circumstances is the ultimate question we must answer. We therefore turn to a review of the relevant Puerto Rico law.

### B. *Applying Puerto Rico law.*

■ Garcia claims that Puerto Rico law requires American Airlines to participate in the Commonwealth's insurance fund, and that the airline's failure to do so makes it an uninsured employer subject to a tort suit under section 16 of the Puerto Rico Workmen's Accident Compensation Act, 11 P.R. Laws Ann. § 16. His receipt of benefits from Florida does not foreclose such a suit, Garcia maintains, in light of "the Commonwealth's unequivocal policy that all employers carrying business in Puerto Rico must contribute to the financial feasibility of the Fund." He asserts that allowing employers to escape liability by obtaining insurance elsewhere would undermine the Commonwealth's compensation framework.

---

substantial contacts, in violation of the Full Faith and Credit Clause of the Constitution. *See generally* 4 *Workmen's Compensation Law* §§ 86.00–87.74; *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 308–313, 101 S.Ct. 633, 638–640, 66 L.Ed.2d 521 (1981); *id.* at 322–23, 101 S.Ct. at 645–46 (concurring opinion of Stevens, J.); *Dissell v. Trans World Airlines,* 511 A.2d 441, 443–45 (Me.1986). This is, in essence, the issue addressed in Section B *infra.* For contrasting circumstances, see, *e.g., Johnson v. United Airlines,* 550 So.2d 134, 135 (Fla.App.1989) (court reversed dismissal of claim for benefits because flight attendant's employment was "principally localized" in Florida), and *Dissell,* 511 A.2d at 445 (over objection of airline, Maine benefits held applicable based on employee's residence there).

7. Comment c of § 183 states, in part:

The grant of two or more awards to an injured employee is not repugnant to the basic principle of workmen's compensation which is to impose absolute but limited liability upon the employer. For a State, on the other hand, to subject a person who has been held liable in workmen's compensation to further unlimited liability in tort or wrongful death would frustrate the workmen's compensation policy of the State in which the award was rendered. *See also* § 184, comment b ("A person who accepts an award under the workmen's compensation statute of a given state may justly be held bound by the provisions of that statute insofar as immunity from tort and wrongful death liability is concerned.").

In emphasizing Commonwealth policy, Garcia has put his best foot forward. Courts that have. rejected application of a foreign state's exclusive remedy provision have done so because the forum state's policy would be disadvantaged. *See, e.g., Reid v. Hansen,* 440 N.W.2d 598, 601–02 (Iowa 1989) (plaintiff's receipt of benefits in Nebraska does not bar tort action under Iowa statute); *Davis v. Morrison–Knudsen Co.,* 289 F.Supp. 835, 838 (D.Ore.1968) (Oregon's policy of providing incentive to elect coverage in Oregon would be undercut by Idaho exclusive remedy provision). If Garcia were correct that barring his suit would conflict with Commonwealth compensation policy, his position would have considerable force.

We can find no conflict, however. Puerto Rico's workers' compensation act, like all such laws, reflects a primary interest in ensuring that the burden resulting from an employee's work-related injury falls upon his employer rather than the individual or his community. *See, e.g., Crider v. Zurich Ins. Co.,* 380 U.S. 39, 41, 85 S.Ct. 769, 770, 13 L.Ed.2d 641 (1965); *Delano v. City of South Portland,* 405 A.2d 222, 225 (Me.1979). As the district court recognized, this interest "has been amply satisfied by the benefits Garcia received through Florida's workers' accident compensation system"—benefits exceeding those available under the Puerto Rico statute. Puerto Rico's policy, like Florida's, immunizes employers who pay statutory benefits from further liability. P.R.Laws Ann. tit. 11, § 21. Because the two governments agree on the compensation *quid pro quo,* Puerto Rico would have no reason to reject Florida's exclusive remedy provision unless it had an interest in providing an incentive for American and similar employers to insure their employees specifically in the Commonwealth.

Our reading of Puerto Rico policy, however, indicates that the Commonwealth expressly has disclaimed an interest in covering employees who do most of their work outside Puerto Rico. In an opinion and subsequent explanatory letter, the Commonwealth's Secretary of Justice concluded that flight attendants who perform more than 50% of their work elsewhere are excluded from the coverage of the Commonwealth's labor laws and Section 16 of the Bill of Rights of the Puerto Rico Constitution, which guarantees various employment-related rights, including safe working conditions and a reasonable minimum salary. *See* Op.Sec.Just., No. 1977–22, Trans. (Oct. 21, 1977); Letter of Dec. 28, 1977, Trans.[8] In making this determination, the Secretary relied on federal and Commonwealth caselaw indicating that "job situs" is "fundamental and determinative" with respect to the applicability of labor laws, Op. Sec.Just., Trans., at 6 (citing *Oil, Chemical & Atomic Workers Int'l Union, et al. v. Mobil Oil Corp.,* 426 U.S. 407, 420–21, 96 S.Ct. 2140, 2146–47, 48 L.Ed.2d 736 (1976) (job situs is controlling factor as to whether state can apply its right-to-work laws); *Green Giant Co. and Saint Paul Fire and Marine Ins. Co. v. Superior Court,* 104 P.R.Dec. 489, 4 Off.Trans. 682, 697 (1975) (constitutional guarantee of overtime compensation does not apply to Puerto Rico migrant workers who work outside of Puerto Rico)).

Although the Secretary's opinion does not explicitly address the workers' compensation statute, we are persuaded that its underlying rationale reaches that system. The Secretary's intent that his determination be applied broadly is strongly suggested by the explanatory letter, in which he concluded that even employees of a Puerto Rico airline are excluded from coverage of the Commonwealth's labor laws because they spend the majority of their work time outside the jurisdictional limits of Puerto Rico. *See* Letter of Dec. 28, 1977, Trans., at 2. We think it follows naturally from this inclusive approach that the opinions be interpreted to encompass all legislation designed to govern the employer-employee relationship, including the Puerto Rico Workmen's Accident Compensation Act.

---

8. As in this case, the flight attendants whose employment triggered the Justice Department inquiry were based in Puerto Rico and lived there. Indeed, they were assigned to "turn around flights" between Puerto Rico and New York, and thus Puerto Rico is "the point of departure and the place toward which they return within the framework of a period of twenty-four hours," Op.Sec.Just., No. 1977–22, Trans., at 2 (Oct. 21, 1977).

314

Puerto Rico, therefore, would have no reason to penalize American Airlines for providing workers' compensation insurance for Garcia under the Florida system rather than through the Puerto Rico Insurance Fund, particularly since Florida provided superior benefits. *See generally Alcoa Steamship Co. v. Velez*, 376 F.2d 521, 524 (1st Cir.1967) (intention by Puerto Rico legislature that its workers' compensation act "not be used as a vehicle to require the maintenance of duplicating compensation insurance by an employer"). Accordingly, we agree with the district court that American Airlines is entitled to summary judgment as a matter of law because Puerto Rico would respect the statutory immunity granted the company under Florida's worker's compensation statute.

*Affirmed.*