Kathleen **TORRES–NEGRON, Plaintiff**

v.

**MERCK & CO., INC., et al., Defendants.**

**Civil No. 02–2454(SEC).**

United States District Court, D. Puerto Rico.

June 13, 2005.

Yolanda V. Toyos–Olascoaga, San Juan, PR, Marcelle D. Martell, Mayol–Bianchi, PSC, Guaynabo, PR, for Plaintiff.

Carl E. Schuster, Schuster Usera Aguilo & Santiago, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Co-defendant Merck Sharp & Dohme I.A. Corp.'s (herein "Merck") motion to dismiss on the pleadings (Docket # 43). Plaintiff filed an opposition (Docket # 46). After carefully examining the parties' filings, the case record and the applicable law, Merck's motion to dismiss will be **DENIED**.

Also pending before the Court is Co-defendants Ricardo Spinola's, Gerardo González's and Mónica Díaz's, and their respective conjugal partnerships', motion to dismiss on the pleadings (Docket # 7). Plaintiff filed an opposition to said motion (Docket # 13). The Court then referred this case to Magistrate–Judge Justo Arenas for a Report and Recommendation (Docket # 28). On September 2, 2003 Magistrate Arenas issued his report recommending that Co-defendants Spinola's, González's, Díaz's and their respective conjugal partnerships' motion to dismiss be granted in its entirety (Docket # 35). Accordingly, Magistrate Arenas further recommended that: (i) Plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") against said Co-defendants and their conjugal partnerships be dismissed; (ii) Plaintiff's claims under the Commonwealth of Puerto Rico labor laws against Co-defendants Spinola, González and their respective conjugal partnerships be dismissed; (iii) all of Plaintiff's claims against Co-defendant Díaz and her conjugal partnership be dismissed; and (iv) leave to file Plaintiff's amended complaint be granted [1]

---

1. On April 17, 2003 the Court issued a Case Management Order (Docket # 15). In said order, the Court set the following deadlines: May 13, 2003 amended pleadings deadline and June 10, 2003 conclusion of the pleading stage. Then, on May 6, 2003 Plaintiff filed a motion objecting to some of the deadlines set forth by the Court and seeking an extension of time to amend its complaint (Docket # 16). The Court granted said motion stating that Plaintiff had until June 13, 2003 to "correctly nam[e] defendants and add[] parties." (Docket # 17). On June 9, 2003 Plaintiff filed its amended complaint (Docket # 20). Although said amended complaint included new factual allegations, claims and relief, it was filed before the expiration of the new deadline set by the Court and, most importantly, before the conclusion of the pleading stage. Thus, said amended complaint is properly before the Court. Accordingly, we will proceed to review Defendants' motions to dismiss in light of the amended complaint and Co-defendants Merck and Díaz are **ORDERED** to file their answer to the amended complaint by **June 24, 2005.**

(Docket # 28). Plaintiff filed an objection to the Magistrate's Report and Recommendation (Docket # 38) and Co-defendants Spinola, González, Díaz and their respective conjugal partnerships filed an opposition to Plaintiff's objection (Docket # 40). After examining the parties' filings and the applicable law, the Court will **APPROVE** and **ADOPT** the portions of the Magistrate's Report and Recommendation that pertain to: (i) Plaintiff's Title VII and ADA claims against Co-defendants Spinola, González, Díaz and their respective conjugal partnerships; and (ii) Plaintiff's Puerto Rico labor law claims against Co-defendants Spinola, González and their respective conjugal partnerships, though on different grounds. However, the Court will **REJECT** the portion of the Magistrate–Judge's Report and Recommendation that pertains to the rest of Plaintiff's claims against Co-defendant Díaz and her conjugal partnership. Accordingly, Co-defendants Spinola's, González's, Díaz's, and their respective conjugal partnerships' motion to dismiss on the pleadings is **GRANTED in part and DENIED in part.**

**Factual Background**

Plaintiff Kathleen Torres–Negrón was an employee for Merck from 1989 until her termination on or about October 2001. On February 19, 1999 Plaintiff was assigned to Merck's Mexican affiliate. However, at all times during her employment in Mexico, Plaintiff remained as an employee of Merck in Puerto Rico, was paid in U.S. currency, maintained all of the U.S. employee benefits, and had the status of a U.S. employee abroad (expatriate) (Docket # 20 ¶ 17). Furthermore, Plaintiff signed with Merck an International Assignment Compensation Package setting the terms and conditions of employment while assigned to work at Merck's Mexican affiliate (Docket # 20 ¶ 17). As such, Plaintiff alleges that her assignment to the Mexican affiliate was "temporary."

Allegedly, since the beginning of her assignment at the Mexican affiliate, Plaintiff endured continuous harassment and discrimination for reason of her nationality and gender, specifically on the part of her supervisor, Co-defendant Spinola (Docket # 20 at ¶¶ 20–41). As part of said pattern of harassment and discrimination, Plaintiff was allegedly deprived of participating in the management of some of the company's products (Docket # 20 at ¶¶ 27 & 29) and began suffering headaches, hypertension and anxiety (Docket # 20 at ¶¶ 25, 30 & 37). This pattern of discrimination and harassment culminated in her dismissal. Plaintiff avers that Defendants' excuse for terminating her employment was her "gross misconduct and moral turpitude in connection with her unauthorized use of the corporated courier." (Docket # 20 at ¶ 41). Plaintiff further avers that, after being terminated, she was left "stranded" in Mexico City by Defendants, denied her paychecks, "almost kicked out" of her company-paid apartment, coerced into signing a document stating that she was leaving Merck's employment on her own accord, denied the issuance of her W–2 forms, denied payment of her federal taxes after said taxes had been retained from her paychecks, denied verification of employment and denied medical coverage continuation benefits, all in violation of the International Assignment and Compensation Package (Docket # 20 at ¶¶ 42–46).

Based on said facts, Plaintiff filed suit against Merck; Co-defendant Spinola, her supervisor in Mexico; Co-defendant González, the Legal and Human Resources Director for Merck's Mexican affiliate; Co-defendant Díaz, the Human Resources Director for Merck Puerto Rico; and their respective conjugal partnerships. Accordingly, Plaintiff has included the following causes of action *against all Defendants:* (i) discrimination for reason of her nationality and gender and retaliation under Title VII;

(ii) discrimination under the ADA; (iii) unjust dismissal under Puerto Rico Law 80 of May 30, 1976, as amended, 29 P.R. Laws Ann. §§ 185a *et seq.* ("Law 80"); (iv) damages under Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 ("Article 1802"); (v) discrimination under Puerto Rico Law 100 of June 30, 1959, as amended, 29 P.R. Laws Ann. §§ 146 *et seq.* ("Law 100") and Puerto Rico Law 69 of July 6, 1985, as amended, 29 P.R. Laws Ann. §§ 1321 *et seq.* ("Law 69"); (vi) disability discrimination under Puerto Rico Law 44 of July 2, 1985, as amended, 1 P.R. Laws Ann. §§ 501 *et seq.* ("Law 44"); (vii) discriminatory retaliation under Puerto Rico Law 115 of December 20, 1991, as amended, 29 P.R. Laws Ann. §§ 194 *et seq.* ("Law 115"); (viii) violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161 *et seq.* ("COBRA"); (ix) illegally withholding payment under Puerto Rico Law 17 of April 17, 1931, 29 P.R. Laws Ann. §§ 176 *et seq.* ("Law 17"); (x) failing to pay statutory Christmas bonuses for calendar years 1999–2001 under Puerto Rico Law 148 of June 30, 1969, as amended, 29 P.R. Laws Ann. §§ 501 *et seq.* ("Law 148"); and (xi) breach of contract (Docket # 20 at ¶¶ 15–19).

## Standard of Review

### I. Motion to Dismiss on the Pleadings

■ Rule 12(c) of the Federal Rules of Civil Procedure provides an avenue for dismissal on the pleadings. A motion under Rule 12(c) may be presented after the conclusion of the pleading stage "but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). In ruling on a motion to dismiss pursuant to Rule 12(c), the Court will apply the same standards for granting relief that it would have employed had the motion been brought under Rule 12(b)(6). *See* Charles Alan Wright & Arthur Miller, 5C *Federal Practice and Procedure,* § 1367 (2003); *see also Slotnick v. Garfinkle,* 632 F.2d 163, 165 (1st Cir.1980).

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v. Arrillaga-Beléndez,* 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.").

■ But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) (*quoting Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.*

■ In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution,

and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (*quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996)). *See also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Moreover, Courts "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993).

## II. Magistrate–Judge's Report and Recommendation

Pursuant to 28 U.S.C. §§ 636(b)(1)(B), Fed.R.Civ.P. 72(b) and Local Rule 72(a) for the District of Puerto Rico, a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharm., Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party can "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States of America v. Mercado Pagn*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (*quoting* 28 U.S.C. § 636(b)(1)). Aside from being filed in a timely manner, objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objection." Local Rule 72(d).

The scope of review of a Magistrate's recommendation is set forth in 28 U.S.C. § 636(b)(1)(c). This section provides that "[a] judge of the [district] court shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which [an] objection is made." *Id.* The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objec-tions, " 'the district court can assume that they have agreed to the magistrate's recommendation.' " *Alamo Rodriguez*, 286 F.Supp.2d at 146 (*quoting Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985)). Thus, no review is required of those issues to which objections are not timely raised. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir.1987). In fact, a party who fails to file any objections to the Magistrate Judge's Report and Recommendation within ten days of its filing waives his or her right to appeal from the district court's order. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4, 5 (1st Cir. 1986); *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992) ("[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal").

## Applicable Law and Analysis

### I. Merck's Motion to Dismiss

Merck requests dismissal of Plaintiff's claims for discrimination under Law 100, Law 69 and Law 44. Merck argues that since 100% of Plaintiff's work was performed in Mexico and the alleged discrimination occurred therein, Plaintiff cannot rely on said Puerto Rico laws for relief since these have no extraterritorial application (Docket # 43 at p. 4). Merck relies squarely on the First Circuit Court decision in *Garcia v. American Airlines, Inc.*, 12 F.3d 308 (1st Cir.1993). According to Merck, the decision in *Garcia* confirms that the Commonwealth of Puerto Rico has an instituted policy that there is no local interest in protecting an employee who

does most of her work outside of Puerto Rico (Docket # 43 at p. 4). Thus, Merck posits that the Court should apply the *job situs* doctrine to the case at bar, that is, that the laws which should control the labor dispute at issue should be the ones of the place where more than 50% of Plaintiff's work took place; that is, Mexico and not Puerto Rico (Docket # 43 at pp. 4–5).

On the other hand, while Plaintiff does not contend that she was assigned to work in Mexico and that the alleged discrimination and dismissal took place in Mexico, Plaintiff avers that at all times she was a Merck Puerto Rico employee temporarily assigned to work in Mexico and paid in U.S. currency from Merck Puerto Rico's budget. Plaintiff further avers that her termination was consulted and authorized by Merck Puerto Rico (Docket # 46 at p. 3). Furthermore, Plaintiff argues that the cases cited in support of Merck's request for dismissal are distinguishable from the situation at hand (Docket # 46 at pp. 2–3). Since there is no clear case law on point, we find it necessary to discuss the three cases which may have a bearing on the present controversy; two decisions of the Puerto Rico Supreme Court and the First Circuit Court's decision in *Garcia*.

In support of its argument that Law 100, Law 69 and Law 44 have no extraterritorial application, Merck refers to the Puerto Rico Supreme Court's decision in *Green Giant v. Tribunal Superior*, 104 P.P.R. 489 (1975)(4 P.R. Off. Trans. 682). In this 1975 case, the controversy was whether the law establishing the regular working day in Puerto Rico and overtime compensation applies to contracts of Puerto Rican migrant workers that render services in agricultural jobs in the United States for non Puerto Rico based employers. In that occasion, the Puerto Rico Supreme Court reasoned that "[t]he application of the guarantee to overtime compensation to the Puerto Rican workers

who render services outside of Puerto Rico would result prejudicial to them since, in effect, it would destroy an additional source of work and of the consequent income; inasmuch as upon imposing a privileged treatment for our workers we would in fact be closing working opportunities for them in states like Maryland and Delaware." *Id.* at 693–94. As such, the Court, after discussing and affirming the applicability of the dominant contacts doctrine in similar cases, decided that since the services rendered by the migrant workers as a function of the contract at issue took place in the United States, the Puerto Rico labor laws did not cover said workers. Thus, the Puerto Rico Supreme Court concluded that, per the doctrine of dominant contacts, the Puerto Rico constitutional guarantee to overtime compensation does not apply to migrant workers who perform agricultural work outside of Puerto Rico for non Puerto Rico based employers. *Id.* at 697.

Subsequently, in 1993 the First Circuit Court decided *Garcia v. American Airlines*, 12 F.3d 308 (1st Cir.1993). In *Garcia*, an injured flight attendant appealed from the District Court's decision granting summary judgment and dismissing his claims against American Airlines. The District Court had held that, having received benefits in Florida, the exclusive remedy provision of the Florida workers' compensation law precluded a tort suit against the same employer in Puerto Rico. The First Circuit affirmed explaining that "Puerto Rico's policy, like Florida's, immunizes employers who pay statutory benefits from further liability." *Id.* at 313. The Court stressed that "the Commonwealth [has] expressly [ ] disclaimed an interest in covering employees who do most of their work outside of Puerto Rico." *Id.* Said conclusion was reached after examining an opinion and explanatory letter issued by the Commonwealth of Puerto Rico's Secretary of Justice in 1977. *Id.*

(*citing* Op. Sec. Just., No.1977–22, Trans. (Oct. 21, 1977)). In this Opinion, the Secretary of Justice concluded that flight attendants who perform more than 50% of their work outside of Puerto Rico were precluded from seeking coverage under Puerto Rico's labor laws. *Id.* The First Circuit then concluded that this Opinion could be interpreted "to encompass all legislation designed to govern the employer-employee relationship, including the Puerto Rico Workmen's Accident Compensation Act." *Id.*

The First Circuit decision in *García* is consonant with the Puerto Rico Supreme Court decision in *Green Giant.* However, in 1999 the Puerto Rico Supreme Court decided *Almodóvar v. Margo Farms Del Caribe, Inc.,* 148 D.P.R. 103 (1999). In this case the Puerto Rico Supreme Court expressly limited its holding in *Green Giant* to migrant workers. Curiously, neither party in the present action discusses the facts that gave rise to the *Almodóvar* case. Notwithstanding, we find that said facts are essential to understanding the extraterritorial reach of Puerto Rico's labor laws. Those facts are as follows.

A Puerto Rico employee of a corporation doing business under the laws of Puerto Rico who performed the majority of his work in the Virgin Islands filed suit against his employer for unpaid overtime wages under the constitution and laws of the Commonwealth of Puerto Rico. This time, the Puerto Rico Supreme Court discussed its decision in *Green Giant* and specifically stated that **none** of the grounds that justified its holding in *Green Giant* were applicable to the case at bar. *Id.* at 117 (our translation and emphasis added). Thus, to the best of our understanding, the Supreme Court not only limited its holding in *Green Giant* to migrant workers rendering services outside Puerto Rico but stated a different policy as to the extraterritorial reach of the Common-

wealth's labor laws. The Supreme Court held that the situation in *Almodóvar* was different: the plaintiff was not a migrant worker working abroad for a non Puerto Rico based employer but a Puerto Rico employee of a company doing business under the laws of Puerto Rico who was **temporarily assigned** to work in the Virgin Islands. *Id.* The Puerto Rico Supreme Court then specifically stated that Puerto Rico labor laws covered the plaintiff and "others like him." *Id.*

Although *Green Giant* has been cited for the general proposition that Puerto Rico laws do not have extraterritorial reach, to date, it appears that the portion of the Puerto Rico Supreme Court decision in *Almodóvar* that pertains to the extraterritorial reach of the Commonwealth's labor laws has not been cited or discussed by any court. *See e.g. Goya de Puerto Rico v. Rowland Coffee,* 206 F.Supp.2d 211, 215 (D.P.R.2002); *Burgos v. Executive Air, Inc.,* 914 F.Supp. 792, 795 n. 7 (D.P.R.1996). As such, the First Circuit has not had an opportunity to express itself regarding the Puerto Rico Supreme Court's holding in said case nor its applicability to a similar set of facts. Having said this, we stress that *Almodóvar* is the most recent Puerto Rico Supreme Court pronouncement on the matter and that *García* was decided without its benefit. The First Circuit analysis in *García* was based strictly on the Commonwealth's Secretary of Justice 1977 Opinion and the now limited *Green Giant* holding. Since in the instant case we are called to interpret Puerto Rico's labor laws, we find that we should abide by Puerto Rico's highest court's most recent ruling on the extraterritorial application of said laws. *See Esso Standard Oil Co. v. Cotto,* 389 F.3d 212, 224 (1st Cir.2004)(*citing Johnson v. Fankell,* 520 U.S. 911, 917, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997)("Neither the U.S. Supreme Court nor any other federal tribunal has any authority to place a construc-

tion on a state statute different from the one rendered by the highest court of the State"); *Salemme v. Ristaino,* 587 F.2d 81, 87 (1st Cir.1978)("It is well settled that the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts.")). Accordingly, we will follow the Puerto Rico Supreme Court's decision in *Almodóvar.*

■ The set of facts in the present case are more similar to the facts in *Almodóvar* than to those in *García* or *Green Giant.* First, it is undisputed that Plaintiff was at all times employed and paid by Merck Puerto Rico. As such, Plaintiff received the compensation and benefits of a Puerto Rico employee stationed or expatriated in Mexico. Second, it remains uncontested that Plaintiff was assigned to Merck's Mexico affiliate on a **temporary basis** and third, the terms and conditions of said temporary assignment were agreed upon by Merck Puerto Rico and Plaintiff as detailed in the International Assigned and Compensation Package. Merck Puerto Rico was even paying for her apartment in Mexico. Therefore, consistent with the motion to dismiss standard and making all inferences in favor of Plaintiff, we hold that Merck may be held liable under Puerto Rico labor laws. The Court is of the impression that it would be unreasonable for Merck to be held immune from any damages suffered by one of its employees as a result of discrimination, even when said employee is working abroad, particularly on a temporary basis. Accordingly, Merck's motion to dismiss on the pleadings is hereby **DENIED.**

## II. Co-defendants Spinola's, González's, Díaz's and their respective conjugal partnerships' Motion to Dismiss

Plaintiff has filed the following objections to the Magistrate's Report and Recommendation: (1) leave to file an amended complaint had been previously sought and granted by the Court (Docket # 38 at ¶¶ 9–10); (2) the Magistrate used the incorrect standard of review, ignoring that Rule 8 of the Federal Rules of Civil Procedure only requires a "short and plain statement" to plead a cognizable cause of action and passed judgment on Plaintiff's chances of success rather than over the sufficiency of the pleadings (Docket # 38 at ¶¶ 15–18); (3) the Magistrate incorrectly concluded that Puerto Rico's labor laws cannot be applied to the facts alleged in the complaint against Co-defendants Spinola, González and Díaz since there are no clear cases on point and the burden in a motion to dismiss rests with the defendants (Docket # 38 at ¶¶ 19–25); and (4) Plaintiff has pled sufficient facts to support its causes of action against Co-defendant Díaz (Docket # 38 at ¶¶ 26). We will address each of these objections to the extent that it is necessary and in conjunction with the different portions of the Magistrate's Report and Recommendation.

### i. Title VII claims

■ In the Report and Recommendation the Magistrate–Judge noted that the issue of whether individual liability attaches to agents or supervisors in the context of Title VII sexual harassment claims remains unresolved by the U.S. Supreme Court or the First Circuit Court of Appeals. As such, the Magistrate held that, there being no reason to depart from the majority rule, no individual liability can be imposed under Title VII claims. Accordingly, the Magistrate–Judge recommended that Plaintiff's Title VII, as well as her ADA claims against Co-defendants Spinola, González and Díaz be dismissed (Docket

# 35 at pp. 11–13 n. 4).[2] There being no objection to the Magistrate's recommendation on these claims, Co-defendants Spinola's, González's and Díaz's, and their respective conjugal partnerships', request for dismissal is hereby **GRANTED.** Accordingly, Plaintiff's Title VII and ADA claims against said Co-defendants will be **DISMISSED WITH PREJUDICE.**

### ii. Commonwealth's Labor Law claims

In their motion to dismiss, Co-defendants Spinola and González argue that Puerto Rico's labor laws are inapplicable to work performed or alleged misconduct outside of Puerto Rico. In support of this contention, Co-defendants discuss the Puerto Rico Supreme Court's decision in *Green Giant* and the First Circuit Court's decision in *García.* To this end, the Magistrate–Judge sided with Co-defendants following the previously discussed *job situs* doctrine. Following this doctrine, the Magistrate found that "the Commonwealth has no interest in protecting an employee where such employee's job situs is not in Puerto Rico." (Docket # 35 at p. 18). The Magistrate then held that "as stated in *García,* and based on the opinion of the Puerto Rico Secretary of Justice therein discussed, Puerto Rico policy would not afford [Plaintiff] the protection of its labor laws given that she performed 100% of the work outside the territorial jurisdiction of the Commonwealth of Puerto Rico." (citation omitted) (Docket # 35 at p. 18). In the alternative, and only as to Co-defen-

dant González, the Magistrate found that Plaintiff's amended complaint failed to state a claim against said Co-defendant (Docket # 35 at pp. 19–20). As such, the Magistrate recommended the dismissal of all of Plaintiff's Puerto Rico labor law claims against Co-defendant Spinola and the dismissal of all of Plaintiff's claims against Co-defendant González. The Court approves the Magistrate's recommendation but on different grounds. Let us explain.

Although we have held today that Merck's request for dismissal on the same grounds be denied per the Puerto Rico Supreme Court holding in *Almodóvar,* the same logic does not apply to the claims against Co-defendants Spinola and González. Co-defendants Spinola and González are Mexican nationals who have no contacts with Puerto Rico. Thus, we hesitate to hold that said Co-defendants who derive no benefit from Puerto Rico's laws may be held liable under Puerto Rico's labor laws. Accordingly, we express no opinion on this matter and find that said controversy is best resolved in state court. As such, we will exercise our discretion and defer this decision to the Puerto Rico state court, especially having previously dismissed all of Plaintiff's federal claims against Co-defendants Spinola, González and their respective conjugal partnerships.

 Therefore, there being no pending federal claims against Co-defendants Spinola, González and their respective conjugal partnerships, we will similarly dismiss

---

2. The Court notes that in their motion to dismiss on the pleadings Defendants failed to argue in favor of the dismissal of Plaintiff's ADA claims. As a general rule, the Court would not dismiss *sua sponte* any of Plaintiff's claims. However, since Plaintiff was advised that the Magistrate recommended the dismissal of its ADA claims based on the same logic applied to its Title VII claims and still failed to object to said recommendation, the

Court deems that Plaintiff had sufficient opportunity to argue against said dismissal and chose not to. As such, the Court will approve and adopt the Magistrate's recommendation that Plaintiff's ADA claims be dismissed against Co-defendants Spinola, González and Díaz since individual liability cannot attach under the ADA. *See e.g., Rivera Sánchez v. Autoridad de Energía Eléctrica,* 360 F.Supp.2d 302, 317–18 (D.P.R.2005).

all of Plaintiff's Commonwealth law claims against said Co-defendants. *See Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir. 1991)("[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit."). Accordingly, all of Plaintiff's supplemental law claims against Co-defendants Spinola, González and their respective conjugal partnerships are hereby **DISMISSED WITHOUT PREJUDICE.**

### iii. Claims against Co-defendant Díaz and her conjugal partnership

Co-defendant Díaz requested dismissal of all of Plaintiff's claims against her and her conjugal partnership alleging that Plaintiff failed to plead a cognizable cause of action against her since she is only mentioned at the outset of the complaint and never again (Docket # 7 at p. 9). As such, Co-defendant Díaz avers that Plaintiff does not bring forth specific allegations or informative facts of wrongdoing on her part or of her involvement in the alleged discriminatory acts against Plaintiff (Docket # 7 at p. 9). Plaintiff countered by filing an amended complaint (Docket # 20). Notwithstanding, the Magistrate–Judge recommended dismissal of all remaining claims against Co-defendant Díaz. The Magistrate stated that the only allegation against Co-defendant Díaz contained in the tendered amended complaint was that she "was Merck's Human Resources Director of Puerto Rico and [that] she denied [P]laintiff her paycheck and her contractual rights." (Docket # 24 at p. 24). The Magistrate then found that Plaintiff's amended complaint was futile since it failed to cure any deficiencies suffered by the original complaint (Docket # 35 at p. 24).

Plaintiff objects by stating that the Magistrate misconstrued the application of the "short and plain statement" pleading requirement under Rule 8 of the Federal Rules of Civil Procedure (Docket # 38 at ¶¶ 15–18). Plaintiff further contends that, in accordance to the motion to dismiss standard of review, the Magistrate should have made all inferences in favor of Plaintiff (Docket # 38 at ¶ 14–15). We agree.

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a third party claim shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Rules further provide that "each averment of a pleading shall be simple, concise and direct" and that "[n]o technical forms of pleading" are required. Fed.R.Civ.P. 8(e)(1). Thus, the pleadings in a complaint are sufficient if the "allegations are detailed and informative enough to enable the defendant to respond." Wright & Miller, *Federal Practice and Procedure:* Civil 3d § 1215 at pp. 190–94. The goal is for the pleadings in a complaint to give a defendant fair notice of the claims and the grounds upon which those claims rest. *Id.* Furthermore, as is commonly known, pleading requirements are to be construed liberally by the Court.

In the case at bar, Plaintiff's amended complaint carefully recounts all the facts that gave rise to the instant suit, from the moment she was assigned to Merck's Mexico affiliate up to after her dismissal (Docket # 20 at ¶¶ 8–47). Specifically, Plaintiff alleges that after her dismissal she was "denied her paycheck and almost kicked out of her company-paid apartment." (Docket # 20 at ¶ 42). Plaintiff further avers that Co-defendant Díaz denied her payment of her earned salary, took part in the decision to terminate her from employment and participated in the breach "her contractual rights" (i.e. International Assignment Compensation Package) (Docket # 20 at ¶ 44). Plaintiff then

132

describes the retaliation she suffered on behalf of Merck or Merck's representatives. For example, failure to issue her W–2 forms, failure to pay federal taxes on her behalf, denial of verifications of employment, and denial her rights under the COBRA to medical coverage continuation packages (Docket # 20 at ¶ 46). As to the latter, although Plaintiff names Merck as the responsible party for this pattern of retaliation, making all inferences in favor of Plaintiff, as we must at this juncture, it is reasonable to conclude that Co-defendant Díaz, the Director of Human Resources for Merck Puerto Rico, participated or had knowledge of these actions. Thus, without further opportunity for discovery, we decline Co-defendant Díaz's invitation to dismiss the remainder of Plaintiff's claims against her.[3] Co-defendant Díaz and her conjugal partnership are on notice of the claims and the grounds upon which those claims rest. Thus, Co-defendant Díaz's and her conjugal partnership's motion to dismiss is **DENIED.**

**Conclusion**

For the reasons set herein, Co-defendant Merck's motion to dismiss on the pleadings is **DENIED.** Co-defendants Spinola's, González's, Díaz's, and their respective conjugal partnerships' motion to dismiss on the pleadings is **GRANTED in part and DENIED in part.** Therefore, Plaintiff's Title VII and ADA claims against Co-defendants Spinola, González and Díaz, and their respective conjugal partnership will be **DISMISSED WITH PREJUDICE.** All of Plaintiff's Commonwealth law claims against Co-defendants Spinola, González and their respective conjugal partnerships will be **DISMISSED WITHOUT PREJUDICE.** Partial Judgment shall be entered accordingly. The

following deadlines are to be followed in this case: (i) Co-defendants Merck and Díaz are instructed to file their answer to the amended complaint by **June 24, 2005;** (ii) discovery shall conclude on **July 15, 2005;** (iii) dispositive motions are due on **July 29, 2005,** and oppositions thereto on **August 8, 2005;** and (iv) the Joint Pretrial Order is due on **August 15, 2005.**

**SO ORDERED.**

---

**3.** Pending against Co-defendant Díaz and her conjugal partnership are Plaintiff's claims for breach of contract, violations to COBRA and

violations to the Commonwealth of Puerto Rico's labor laws.