Karla MALAVÉ–TORRES, Plaintiff,

v.

José M. CUSIDO, et al., Defendants.

Civil No. 11–1432 (GAG/BJM).

United States District Court,
D. Puerto Rico.

March 15, 2012.

Hector J. Perez–Rivera, Luis R. Ortiz–Segura, Pinto–Lugo, Oliveras & Ortiz, PSC, San Juan, PR, for Plaintiff.

Kristy M. Johnson, Carlton Fields, P.A., Miami, FL, Mariela Rexach–Rexach, Schuster & Aguilo LLP, San Juan, PR, for Defendants.

## ORDER

GUSTAVO A. GELPI, District Judge.

Order Adopting Report and Recommendation Denying MOTION to Dismiss/Lack of Jurisdiction.

## *REPORT AND RECOMMENDATION*

BRUCE J. McGIVERIN, United States Magistrate Judge.

Karla Malavé–Torres ("Malavé") sued José M. Cusido ("Cusido"), Sterling Foods, Inc. ("Sterling") (collectively, "defendants"), and an unnamed insurance company, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, Law No. 3 of March 13, 1942 ("Law 3"), 29 L.P.R.A. §§ 467 *et seq.*, Law No. 69 of July 6, 1985 ("Law 69"), 29 L.P.R.A. §§ 1321 *et seq.*, and Law No. 100 of June 30, 1959 ("Law 100"), 29 L.P.R.A. §§ 146 *et seq.*, as well as wrongful discharge in violation of Law No. 80 of May 30, 1976 ("Law 80"), 29 L.P.R.A. §§ 185a *et seq.*, and tort liability under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. (Docket No. 1). Sterling moved to dismiss for lack of personal jurisdiction, and both Sterling and Cusido move to dismiss for lack of subject matter jurisdiction. (Docket No. 18). Malavé opposed the motions (Docket No. 25), defendants replied (Docket No. 27), and Malavé surreplied (Docket No. 29). The motion was referred to me for a report and recommendation. (Docket No. 19). For the reasons that follow, I recommend that the motions to dismiss be **denied.**

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants argue that Puerto Rico employment law has no extraterritorial effect, and that Malavé was not employed in Puerto Rico, requiring dismissal of the Commonwealth claims. Although they label this a challenge to subject matter jurisdiction, in substance the argument goes to the legal sufficiency of the plaintiff's complaint, and should be analyzed under Fed. R.Civ.P. 12(b)(6). As plaintiffs correctly argue, the court has supplemental jurisdiction over the Commonwealth claims, and Puerto Rico employment law applies.

■■ Federal courts have supplemental jurisdiction over claims that "form part of the same case or controversy under Article III" as an action over which there is original jurisdiction. 28 U.S.C. § 1367(a). Thus, "[a] court may exercise supplemental jurisdiction over a state claim whenever it is joined with a federal claim and the two claims 'derive from a common nucleus of operative facts' and the plaintiff 'would ordinarily be expected to try them both in one judicial proceeding.'" *Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 206 (1st Cir.2000) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The complaint describes a single course of events to plead both federal and Puerto Rico causes of action, and defendants do not challenge the sufficiency of supplemen-

tal jurisdiction. The court therefore has subject matter jurisdiction over the Commonwealth claims.

In accordance with defendants' invitation to alternatively evaluate their motion under Rule 12(b)(6), I will consider their arguments in light of the standard applicable under that rule. (*See* Docket No. 18, p. 11 n. 4).

## I. Rule 12(b)(6) Standard

To survive dismissal, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011). A court parses the allegations of the complaint in two steps. First, " 'legal conclusion[s] couched as ... fact[ ]' or 'threadbare recitals of the elements of a cause of action' " are identified and completely disregarded. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)) (alteration marks omitted). The remaining "[n]on-conclusory factual allegations" are then "treated as true, even if seemingly incredible." *Id.* The overall standard is thus only satisfied if those facts support a reasonable inference of liability. *Id.* However, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.* A court that considers matters outside the pleadings must give notice to the parties and convert the motion to dismiss into a motion for summary judgment. Fed. R.Civ.P. 12(d). However, no conversion need occur when the district court "chooses to ignore the supplementary materials" provided by the parties. *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir.1992); *see* R. 12(d) (conversion required when "matters outside the pleadings are presented to *and*

*not excluded by* the court ...." ) (emphasis added).[1]

## II. Allegations of the Complaint

Malavé resides in Puerto Rico. (Docket No. 1, ¶ 8). Sterling is a Florida corporation, with an office in Miami, Florida and doing business in Puerto Rico. (*Id.*, ¶¶ 11–12). Sterling has at least 20 employees. (*Id.*, ¶ 16). Sterling is a meat packing producer, and has limited participation in the Puerto Rico market. (*Id.*, ¶ 20). Sterling and Cusido decided to hire a "Marketing Director" to establish a presence in Puerto Rico. (*Id.*, ¶ 21). Cusido contacted Malavé in late April, 2010, to offer her employment. (*Id.*, ¶ 22). Malavé accepted an offer for a base salary of $1,546.15 per week, with a car allowance of $650 per month and expenses. (*Id.*, ¶ 23). Malavé began work on May 1, 2010 in the Marketing Director position. (*Id.*, ¶ 24). Malavé performed her duties satisfactorily. (*Id.*, ¶ 25). She had prior business opportunities and marketing contracts in Panama, and she organized a food show in Panama to showcase Sterling's products. (*Id.*, ¶ 27). She traveled to Panama to set up the show, invited her business contacts, and held the show around August 3, 2010. (*Id.*, ¶ 28).

Around September 3, 2010, Malavé informed Cusido that she was pregnant and would not travel as frequently as she had before. (*Id.*, ¶ 29). The defendants subsequently told Malavé that her performance was deficient, and that they had decided to terminate her employment immediately. (*Id.*, ¶ 31). Malavé had not been informed of any performance issues before she provided notice of her pregnancy, and defendants' statement amazed her. (*Id.*, ¶¶ 31–32). Cusido attempted to persuade Ma-

---

**1.** For this reason, I do not consider any of the evidence submitted in connection with the portion of Sterling's motion to dismiss dealing with personal jurisdiction.

lavé to resign and "continue other endeavors" following delivery. (*Id.*, ¶ 33). Following other communications with Cusido, Malavé informed her employer that she believed she was being discriminated against because of her pregnancy. (*Id.*, ¶ 34). The defendants did not respond to this allegation. (*Id.*, ¶ 35). Following her dismissal, a male has worked as Marketing Director, using the clients and contacts Malavé developed while working at Sterling. (*Id.*, ¶ 37). Malavé subsequently sought psychological treatment for anxiety, depression, and self-esteem problems. (*Id.*, ¶ 38). Malavé suffered a miscarriage. (*Id.*, ¶ 39). Malavé subsequently became severely depressed and stressed, and began outpatient psychiatric treatment. (*Id.*, ¶ 40). On October 5, 2010, Malavé filed a charge at the San Juan EEOC office against Cusido and Sterling. (*Id.*, ¶ 36).

### III. Discussion

The defendants argue (1) that Puerto Rico conflict of laws analysis requires dismissal of the Commonwealth claims, and (2) that Puerto Rico employment law, on its own terms, does not apply to Malavé. Therefore, they reason, the Puerto Rico causes of action must be dismissed. Although I will analyze the legal arguments presented by the defendants, I note that they rely extensively on evidence beyond the complaint to support their position. Because I have not converted this motion to one for summary judgment under Rule 12(d), my legal analysis here is based on the facts alleged in the complaint. However, the defendants will not be precluded from revisiting the application of this law to evidence later submitted for summary judgment. With that caveat in mind, I consider each position in turn.

First, defendants argue that conflict of laws analysis requires dismissal of the Commonwealth claims. A federal court with diversity or supplemental jurisdiction applies state substantive law to state law claims. *Hoyos v. Telecorp Comm'ns, Inc.*, 488 F.3d 1, 5 (1st Cir. 2007). This includes the forum state's choice of law principles. *See Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe)*, 633 F.3d 50, 54 n. 7 (1st Cir.2011) (diversity case). Puerto Rico courts generally follow the Restatement (Second) of Conflict of Laws. *Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del Caribe, Inc.*, 145 F.3d 463, 478–79 (1st Cir.1998). "The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions.…" *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir.2004) (applying Restatement under Massachusetts law).

Here, although the defendants recite the choice of law factors applicable to contract disputes, they seek dismissal of Malavé's statutory claims.[2] They suggest that "the applicable law could be that of Florida, or possibly Panama or Costa Rica," but fail to address the threshold inquiry of whether there is an actual conflict with Puerto Rico law. This argument is therefore waived, as defendants do not provide the "raw materials" necessary to decide whether a Puerto Rico court would dismiss the Commonwealth claims under a conflict of laws analysis. *See Velázquez Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir.2011) (poor analysis waives consideration of arguments); *cf. Reicher*, 360 F.3d at 4–5 (comparing Massachusetts and Maryland insurance settlement practices statutes); *Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29–30 (1st Cir.1997)

---

**2.** They do not mention Malavé's tort cause of action under Article 1802.

(comparing New Jersey and Massachusetts insurance law).

■ Defendants further argue that Commonwealth employment law does not apply here because Sterling is not a Puerto Rico employer. Puerto Rico's overtime compensation law does not apply to migrant workers working outside of Puerto Rico for non-Puerto Rico employers. *See Green Giant Co. v. Tribunal Superior,* 4 P.R. Offic. Trans. 682, 104 D.P.R. 489 (1975). Relying on *Green Giant* and Commonwealth executive branch opinions, the First Circuit predicted that Puerto Rico courts would decline to apply employment laws to a non-Puerto Rico employer of an employee who worked outside of Puerto Rico more than 50 percent of the time. *See García v. Am. Airlines, Inc.,* 12 F.3d 308, 312–314 (1st Cir.1993). The Puerto Rico Supreme Court later held that *Green Giant* was limited to its facts, and that the overtime compensation law did apply to an employee who was temporarily assigned to work outside of Puerto Rico by a company authorized to do business in Puerto Rico. *See Almodóvar v. Margo Farms Del Caribe, Inc.,* 148 D.P.R. 103, 116–117 (1999). Applying *Almodóvar* and distinguishing *Green Giant* and *García,* an opinion in this district held that employment discrimination and unjust dismissal laws similarly apply to an employee temporarily assigned to work outside of Puerto Rico. *See Torres–Negrón v. Merck & Co.,* 376 F.Supp.2d 121, 126–29 (D.P.R.2005), *rev'd on other grounds,* 488 F.3d 34 (1st Cir.2007). However, another opinion concluded that employment discrimination and unjust dismissal laws did not apply to an employee of a non-Puerto Rico corporation who did not work in Puerto Rico, and who did not move to Puerto Rico until after he was fired. *See Capezano v. ARCOR SAIC,* 743 F.Supp.2d 71, 77–78 (D.P.R.2010).

■ Here, the complaint survives the motion to dismiss because it alleges that Malavé lived in Puerto Rico, and that Sterling hired her in order to establish its presence in Puerto Rico. There is therefore a reasonable inference that she did enough work within Puerto Rico to come within the ambit of its employment laws. Absent further analysis of the choice of law question or other limits on the applicability of Puerto Rico law,[3] the defendants have failed to show that Malavé's complaint should be dismissed at this stage.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Sterling also moves to dismiss for lack of personal jurisdiction. Sterling argues that because it is a Florida corporation and Malavé performed the majority of her work in Panama, it lacks the minimum contacts with Puerto Rico required to bring it into court here. Malavé counters that she was based out of Puerto Rico, and that Sterling may therefore be sued here.

### I. Legal Framework

■ Personal jurisdiction relates to the power of a court over a defendant. *Pritzker v. Yari,* 42 F.3d 53, 59 (1st Cir.1994). The plaintiff bears the burden of proving the necessary facts to establish personal jurisdiction over the defendant. *See Negrón–Torres v. Verizon Commc'ns Inc.,* 478 F.3d 19, 23 (1st Cir.2007). Depending on the nature of the challenge presented, a court may employ one of several evaluative frameworks. Under the standard *prima facie* method, a court "considers 'only whether the plaintiff has proffered evi-

---

3. *See, e.g.,* Katherine Florey, *State Courts, State Territory, State Power: Reflections on the Extraterritoriality Principle in Choice of Law and Legislation,* 84 Notre Dame L. Rev. 1057 (2009).

dence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Id.* at 23 (1st Cir. 2007). The court may also consider facts put forward by the defendant to the extent that they are uncontradicted. *Id.* However, the court does not "credit conclusory allegations or draw farfetched inferences." *Id.* (quoting *Mass. Sch. of Law, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998)). The court may, alternatively, hold an evidentiary hearing and make findings of fact in order to "adjudicate the jurisdictional issue definitively before the case reaches trial." *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 146 (1st Cir.1995). However, such a hearing is only needed where a party so requests, and where "issues of credibility are presented and must be resolved to determine an issue of fact material to the court's disposition of the motion to dismiss." *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 676 (1st Cir.1992). A third course employs an evidentiary hearing but limits its scope to finding whether there is a "likelihood of the existence of each fact necessary to support personal jurisdiction," deferring an actual finding until trial. *Id.* at 677.

Here, although the parties hotly contest the legal conclusions to draw from their respective submissions of evidence, I cannot discern any factual disputes or determinations of credibility to be resolved. For instance, although Sterling argues that it did not recruit Malavé with the purpose of expanding into Puerto Rico, and that it did not initially intend for her to work in Puerto Rico, it does not dispute the fact that particular contacts occurred. (*See* Docket No. 27, p. 6). And although this evidence contradicts Malavé's complaint (*e.g.* Docket No. 1, ¶ 27), a hearing is only necessary to resolve disputes in the submitted evidence; the complaint's allegations are not on the table here. Moreover, Sterling encourages the court to resolve the issue without

a hearing (Docket No. 27, p. 4), while Malavé only requests a hearing in the event any facts are in controversy (Docket No. 25, p. 2). Therefore, I proceed under the *prima facie* standard and outline the evidence set forth by the parties.

## II. Factual Background

While working for Packers Provision, Inc., a company in Guaynabo, Puerto Rico, Malavé was approached by Cusido, the Vice President of sales and marketing for Sterling, with an offer to work as the brand manager for Sterling. (Docket No. 27–1, p. 5–8). Malavé accepted the offer, and traveled to Florida, where Sterling's headquarters are located, to sign official employment and tax documents. (Docket No. 27–1, p. 9; Docket No. 18–1, ¶ 15). Malavé testified that she understood her e-mail exchanges with Sterling to indicate she was hired to represent it in several countries, including Panama and Costa Rica, with an emphasis on Panama. (Docket No. 27–1, p. 30, 32–33). About a month after she was hired, Malavé began to organize a showcase in Panama that would serve as a platform to introduce Sterling's products to the Panamanian market. (Docket No. 27–1, p. 27–28). She also spoke with potential distributors in Puerto Rico about organizing a food show that would help market Sterling's products, but these negotiations never materialized. (*Id.* p. 26–27). Malavé performed the majority of her responsibilities as Marketing Director for Sterling in Puerto Rico. (Docket No. 29–8, ¶ 7). Cusido held meetings and conferences with Malavé in Puerto Rico. (*Id,* ¶ 12).

Sterling is based in Miami, Florida, and its corporate records are located there. (Docket No. 18–1, ¶ 2). It is not registered with the Puerto Rico government, and never has been. (*Id.,* ¶ 4). It has no offices, property, bank accounts, telephone

numbers or listings, or advertising in Puerto Rico. (*Id.*, ¶¶ 5–9). Sterling has never paid taxes to Puerto Rico or appointed an agent for service of process. (*Id.*, ¶¶ 10–11). Cusido, who is Sterling's Vice President of Sales and Marketing, rents an apartment in Puerto Rico, and was the only Sterling employee to regularly transact business in Puerto Rico. (*Id.*, ¶¶ 12–13). Sterling's only purchases in Puerto Rico were occasional office supplies. (*Id.*, ¶ 14). Malavé offered to make contacts in Puerto Rico when she did not make immediate sales in Panama or Costa Rica, but Sterling did not have the intent for her to market in Puerto Rico when it hired her. (*Id.*, ¶ 17). Living in Puerto Rico was not a requirement for her job responsibilities and she primarily communicated with Sterling by phone and e-mail, but Cusido would occasionally meet with her there. (*Id.*, ¶¶ 18–20). Sterling made its decision to ask for her resignation in Miami, Florida. (*Id.*, ¶ 21).

Malavé had an office in Puerto Rico which she was able to use rent-free, and which Cusido was aware of; it did not have Sterling Foods signage, and she never met with Cusido there. (Docket No. 27–1, p. 35–42).

### III. Discussion

■ Where a case is brought under federal question jurisdiction, it is governed by the due process clause of the Fifth Amendment. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir.2001). Though due process requires only that the defendant have adequate contacts with the United States as a whole, rather than with a particular state, the plaintiff "must still ground its service of process in a federal statute or civil rule." *Id.* Title VII, which contains the Pregnancy Discrimination Act, does not specify nationwide service of process. *See Seward v. Alexander Props. Group, Inc.,* No. 1:05CV601 SEBJPG, 2005 WL 3150167, at *3, 2005 U.S. Dist. LEXIS

31150, at *9 (S.D.Ind. Nov. 21, 2005) (citing 42 U.S.C. § 2000e–5(f)(3)). However, Rule 4(e) authorizes service of process according to the applicable state law unless federal law provides otherwise. Fed. R. Civ. Pro. 4(e). Therefore, service of process is proper if it would be permitted under Puerto Rico law. Puerto Rico's long-arm statute "is coextensive with the reach of the Due Process Clause." *Carreras v. PMG Collins, LLC,* 660 F.3d 549, 552 (1st Cir.2011).

■ Due process considerations are satisfied where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (alteration in original) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The court may exercise its power over a non-resident defendant through general or specific jurisdiction. *Swiss Am. Bank,* 274 F.3d at 620. In order to establish general jurisdiction, a plaintiff must demonstrate that: (1) the defendant maintained continuous and systematic general business contacts with the forum state; and (2) the exercise of jurisdiction is reasonable. *Id.* at 619. To prevail on a claim of specific personal jurisdiction, a plaintiff must show that the defendant has sufficient minimum contacts with the forum that he should anticipate being haled into court there. *Adelson v. Hananel,* 510 F.3d 43, 49 (1st Cir.2007). Here, Malavé only develops an argument for specific jurisdiction; though she makes a passing reference to Sterling's presence in Puerto Rico and prior relationship with Packers, she does not further analyze general jurisdiction, and I consider it no further.

The minimum contact test is a three-part analysis. *Phillips Exeter Academy v. Howard Phillips Fund,* 196 F.3d 284, 288 (1st Cir.1999); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994); *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992). The plaintiff must show that: (1) the claim underlying the litigation directly relates to or arises out of the defendants activities and contacts with the forum; (2) the defendant's contacts and activities in the forum constitute a purposeful availment of the benefits and protections afforded by the forum's laws; and (3) exercising jurisdiction over the defendant is reasonable in light of a variety of additional elements that touch upon the fundamental fairness of an exercise of exercise of jurisdiction, collectively known as the "gestalt factors." *United Elec.,* 960 F.2d at 1089.

### A. Relatedness

Relatedness generally requires that the dispute between the parties arise out of the defendant's connection with the forum. *Pritzker,* 42 F.3d at 61. In other words, Malavé must be able to show that the injury would not have occurred but for the defendant's activity in the forum-state. *See United Elec.,* 960 F.2d at 1089.

Here, Malavé's cause of action arises out of the termination of her employment. Malavé testified in her deposition that Sterling offered her employment while doing business with Packers Provision, Malavé's employer at the time. (Docket No. 27–1, p. 5–7). Malavé performed the majority of her responsibilities as Marketing Director for Sterling in Puerto Rico (Docket No. 29–8, ¶ 7) and Cusido held meetings and conferences with her in Puerto Rico. (*Id,* ¶ 12). Malavé also made arrangements to organize a presentation of Sterling's products to retailers in

Puerto Rico. (Docket No. 27–1, p. 24–25). She submitted e-mails illustrating contacts she made in Puerto Rico on behalf of Sterling. (Docket No. 29–6).[4] Sterling points to its General Manager's statement that the company made the decision to ask for her resignation in Florida. (Docket No. 18–1, ¶ 21). Nonetheless, Malavé has provided sufficient evidence to show that her employment relationship with Sterling was driven by its contacts with her in Puerto Rico, and therefore that the cause of action arising from her termination is based on those contacts.

### B. Purposeful Availment

A plaintiff must also show that defendants' contact with the forum constitutes purposeful availment of the benefits and protections afforded by the forum's laws. *Phillips Exeter,* 196 F.3d at 288. This inquiry considers both voluntariness and foreseeability. *Adelson,* 510 F.3d at 50. A party's contacts are voluntary when they are deliberate and "not based on the unilateral actions of another party." *Id.* The foreseeability element considers whether the "defendant's contacts [are] such that he could reasonably anticipate being haled into court" in the forum state. *Id.* (internal citation omitted). Thus, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions for the consequences of their activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations omitted). Entering into an agreement with an out-of-state party does not automatically establish sufficient minimum contacts; however, a court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual

---

4. Portions of the exhibit were not translated into English, and are not considered here.

course of dealing." *Id.* at 479, 105 S.Ct. 2174.

Sterling argues that Malavé was hired to create a market in Panama, and that her residence in Puerto Rico was merely incidental. However, Malavé's evidence tends to show that she actually performed significant duties in Puerto Rico. In addition, Cusido, Malavé's immediate supervisor, resides in Puerto Rico and held meetings with her there. This was therefore not a one-time transaction, but rather a continuing relationship with a resident of Puerto Rico. Moreover, there is no evidence that their agreement contemplated that she would only work outside of Puerto Rico. And Krantz's statement that Sterling did not originally intend her to work in Puerto Rico does not contradict the fact that Sterling's employees made contacts with her in Puerto Rico during the employment relationship. *Cf. Phillips v. Prairie Eye Center,* 530 F.3d 22, 29 (1st Cir.2008) (finding no purposeful availment where contract was for employment in Illinois, not Massachusetts, and where employee never did any work). For this reason, Malavé has sufficiently shown that Sterling purposefully availed itself of the benefits of doing business in Puerto Rico.

## C. Reasonableness

Even if a plaintiff is able to establish minimum contacts between a defendant and the forum state, the court's exercise of jurisdiction "must comport with fair play and substantial justice." *Phillips,* 530 F.3d at 29 (internal citations omitted). In deciding whether exercising jurisdiction over a defendant is reasonable, the court considers: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *United Elec.,* 960 F.2d at 1088 (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). "[T]he weaker a plaintiff's showing of relatedness and purposeful availment, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster–New York,* 26 F.3d at 210.

First, travel between Florida and Puerto Rico is not especially burdensome for business travelers, at least in the absence of any "special or unusual" considerations. *See Pritzker,* 42 F.3d at 64 (finding "no especially ponderous burden" in bringing a New York corporation into Puerto Rico court). Sterling's passing complaint of a "significant burden," absent any more specific articulation, is therefore unpersuasive. Second, Malavé is a resident of Puerto Rico, and the Commonwealth has a cognizable stake in providing a forum to redress its citizens' complaints; her inclusion of plausible causes of action under Puerto Rico law underscores this point. Therefore, though she also had contacts with Florida, Puerto Rico retains an interest in resolving the dispute here. *See Adelson,* 510 F.3d at 52. Third, Malavé's interest in obtaining convenient and effective relief weighs in favor of a Puerto Rico forum: she is a Puerto Rico resident and chose to bring her suit here. *See id.* at 51–52 (recognizing traditional deference to plaintiff's choice of forum). Fourth, Sterling does not point the court to any other ongoing litigation between itself and Malavé; therefore, the judicial efficiency factor is at least neutral, and perhaps slightly favors the already-filed complaint here. *See id.* at 52 (factor weighs against plaintiff where there are parallel suits in foreign courts). Fifth, Sterling concedes that there is no conflict among the potentially-interested sovereigns' substantive social policy, making this factor neutral. (Docket No. 18, p. 9).

In sum, Malavé has submitted evidence showing that her discrimination claim arose from Sterling's contacts with Puerto Rico, and that Sterling's conduct in Puerto Rico was voluntary and rendered litigation here foreseeable. The gestalt factors further weigh in favor of jurisdiction in Puerto Rico, and do not point towards any other forum in particular. Therefore, Sterling is properly subject to personal jurisdiction in this court.

## CONCLUSION

For the foregoing reasons, I recommend that the defendants' motions to dismiss be **DENIED.**

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987).

**IT IS SO RECOMMENDED.**

February 22, 2012.